## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| GAYLON RASPBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-700 RLW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has subject matter jurisdiction over this action under 42 U.S.C. § 405(g). Plaintiff filed a brief in support of the Complaint (ECF No. 21) and Defendant filed a brief in support of the Answer. (ECF No. 27). The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court finds the Commissioner's final decision is supported by substantial evidence on the record as a whole and should be affirmed.

### I.    Background

Plaintiff protectively applied for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI on September 28, 2017. (Tr. 12, 168, 175). In both applications, Plaintiff stated he was born in 1965 and alleged he became disabled on August 1, 2011. (Tr. 168, 175). In his Disability Report, Plaintiff alleged disability due to (1) knee and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is automatically substituted for Andrew Saul as the Defendant in this suit. *See* 42 U.S.C. § 405(g).

foot problems, (2) shoulder problems, (3) depression and other mental issues, and (4) wrist problems. (Tr. 208).

On January 25, 2018, Defendant issued notices of disapproved claims as to both DIB and SSI. (Tr. 88, 92). Plaintiff filed a timely Request for Hearing by Administrative Law Judge (ALJ). (Tr. 98). At the hearing on July 11, 2019, Plaintiff amended the alleged onset date of disability to September 5, 2015. (Tr. 12). After the hearing, the ALJ issued an unfavorable decision on August 14, 2019. (Tr. 12-27). Plaintiff then filed a timely Request for Review of Hearing Decision with the Social Security Appeals Council. (Tr. 161-4). The Appeal Council denied Plaintiff's request. (Tr. 2) and the decision of the ALJ became Defendant's final decision. Plaintiff has exhausted his administrative remedies.

## II.  Legal Standard

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The impairment or impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520, 416.920(a)(1); *see also McCoy v. Astrue*, 648 F.3d

605, 611 (8th Cir. 2011) (discussing the five-step process). First, the Commissioner considers the claimant's work activity. If the claimant is currently engaged in "substantial gainful activity," the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611.

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe physical or mental impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d). If the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611.

Third, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 912 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own

3

description of his limitations," it is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id*. At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted case omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (quotation marks and quoted case omitted).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, at Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 5, 2015, the amended alleged onset date. (Tr. 14). At Step 2, the ALJ found that Plaintiff's severe impairments are: (1) left knee osteoarthritis, status-post surgical fixation, (2) peripheral neuropathy, (3) chronic obstructive pulmonary disease (COPD), (4) depression, (5) anxiety and panic disorder, and (6) alcohol dependence. *Id*. At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ found that Plaintiff has the RFC to perform light work in that he:

> can lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant can occasionally climb ladders, ropes and scaffolds, climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant can occasionally use foot controls bilaterally. The claimant can frequently handle, finger and feel bilaterally. The claimant can occasionally work at unprotected heights, with moving

mechanical parts, and in vibration. The claimant can never tolerate
exposure to humidity/wetness, dust, odors, fumes and pulmonary
irritants beyond a level found in an indoor work environment such
as an office or retail store; and never extreme cold and extreme heat.
The claimant is able to carry out detailed but uninvolved instructions
in the performance of simple, routine and repetitive tasks in a work
environment with no fast-paced production requirements involving
simple work-related decisions, and with only occasional judgment
and work place changes. The claimant can occasionally respond to
and have interaction with supervisors, coworkers and the general
public.

(Tr. 19). At Step 4, the ALJ found Plaintiff can perform past relevant work as a cleaner. (Tr. 25).

In the alternative, at Step 5, the ALJ found "there are other jobs that exist in significant numbers

in the national economy that the claimant also can perform." (Tr. 26).

## IV.  Overview of the Record

An overview of the record is helpful in this case.[2] Dr. Cole evaluated Plaintiff's medical

records as a state agency medical consultant. (Tr. 22). In January 2018, Dr. Cole found that

Plaintiff had the following severe, medically determinable impairments: (1) osteoarthritis and

allied disorders, (2) depressive, bipolar and related disorders, and (3) anxiety and obsessive-

compulsive disorders. (Tr. 75). Dr. Cole stated that Plaintiff could occasionally lift and/or carry 20

pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-

hour workday, and sit for the same amount of time. (Tr. 78). Ultimately, Dr. Cole concluded "there

is insufficient evidence to establish the claimant's impairments met SSA criteria to be considered

disabled prior to his [date last insured] of 9/30/2016." (Tr. 67). He opined that Plaintiff is limited

to light work. (Tr. 84).

---

[2] The record contains substantial evidence pertaining to Plaintiff's mental health. Plaintiff's
psychological impairments are not at issue in this case. For that reason, the Court will focus largely
on Plaintiff's COPD and polyneuropathy, the two impairments Plaintiff specifically identifies in
his brief.

Plaintiff began treating with Dr. Jeremy Talley on August 8, 2018. (Tr. 395). On that date, Plaintiff's Problem List included tobacco dependence, uncomplicated alcohol dependence, generalized anxiety disorder, current moderate episode of major depressive disorder, peripheral polyneuropathy, and chronic pain in the right foot. *Id*. Plaintiff's oxygen saturation level was 98%. (Tr. 396). Plaintiff disclosed that he was smoking two packs of cigarettes per day. (Tr. 397). Dr. Talley advised Plaintiff to quit smoking. (Tr. 402). Plaintiff reported occasional cough and wheezing. (Tr. 399). After a physical exam, Dr. Talley wrote: "Effort normal and breath sounds normal. No respiratory distress. He has no wheezes. He has no rales." (Tr. 401). Dr. Talley observed, among other things, abnormal monofilament testing – reduced bilaterally.[3] (Tr. 401). He diagnosed Plaintiff with peripheral polyneuropathy[4] and chronic pain in the right foot. (Tr. 402). Dr. Talley ordered a pulmonary function test[5] (Tr. 402), which Plaintiff completed on August 30, 2018. (Tr. 450). The results reflect moderate COPD without response to inhaled bronchodilators. *Id*. Plaintiff's $FEV_1$[6] was reduced at 2.23 L or 57% of predicted. *Id*. Plaintiff underwent a chest x-ray on the same date. (Tr. 469). The findings reflect Plaintiff's lungs were "well expanded and

---

[3] In this test, a soft nylon fiber called a monofilament is brushed over areas of the patient's skin to test sensitivity to touch. *Diabetic Neuropathy*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/diagnosis-treatment/drc-20371587 (last visited September 27, 2021).

[4] Polyneuropathy is defined as, "A nontraumatic generalized disorder of peripheral nerves, affecting the distal fibers most severely, with proximal shading (e.g., the feet are affected sooner or more severely than the hands), and typically symmetrical; most often affects motor and sensory fibers almost equally, but can involve either one, either solely or very disproportionality; classified as axon degenerating (axonal), familiar or sporadic." *Polyneuropathy*, *Stedman's Medical Dictionary* 1536 (28th ed.).

[5] Pulmonary function tests "are noninvasive tests that show how well the lungs are working. The tests measure lung volume, capacity, rates of flow, and gas exchange." *Pulmonary Function Tests*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/pulmonary-function-tests (last visited September 21, 2021).

[6] FEV is defined as, "Abbreviation for forced expiratory volume, with subscript indicating time interval in seconds." *FEV*, *Stedman's Medical Dictionary* 712 (28th ed.).

clear with no concerning focal pulmonary opacities, evidence of edema or effusions." *Id.* The radiologist noted "[n]o acute cardiopulmonary disease process identified." *Id.*

Dr. Talley saw Plaintiff again on September 5, 2018 for a follow-up on his anxiety disorder and major depression. (Tr. 419). Plaintiff's oxygen saturation level was 99%. (Tr. 420). Plaintiff again reported smoking two packs of cigarettes a day and Dr. Talley again advised him to quit. (Tr. 423). Regarding Plaintiff's Pulmonary Function Test, Dr. Talley wrote: "[Plaintiff] just had spirometry/PFT. And it showed moderate COPD. Albuterol helps a lot. He still smokes 2 ppd. Have counseled him to reduce and stop. New diagnosis. PFT just done yesterday." *Id.*

Plaintiff returned to Dr. Talley's office on December 26, 2018. (Tr. 434). Plaintiff's oxygen saturation level was 98%. (Tr. 435). Plaintiff reported he was still smoking but now only one pack per day. (Tr. 438). Regarding Plaintiff's COPD, Dr. Talley wrote:

> [Plaintiff] is taking medication as directed. He is tolerating His medication well, no adverse SE. his COPD is stable. taking medications as instructed, no medication side effects noted. The symbicort has made a significant difference – started 3-4 months ago. Now rarely coughs. Breathing stable and some better with the symbicort.

(Tr. 438) (capitalization original). Upon physical examination, Dr. Talley noted normal breathing and no respiratory distress. (Tr. 441).

In his Disability Report from October 2017, Plaintiff stated that he stopped working because he was laid off. (Tr. 208). In his Function Report from the same month, he stated he was fired from "maybe half [his] jobs" because of problems getting along with other people, specifically "homo's" [sic] and "lazy people." (Tr. 225). In the same Function Report, Plaintiff explains that he only sleeps approximately 45 minutes at a time, eats only every other day, and cannot mow the lawn or do laundry (Tr. 222). Plaintiff attributes these difficulties to his

depression. *Id.* In his Medical and Vocational Information from February 2019, Plaintiff stated he has not been hospitalized in the last four months. (Tr. 279).

During his hearing with the ALJ, Plaintiff reported that he cannot retrieve his mail without "huffing and puffing for a half hour." (Tr. 43). Plaintiff made no other mention of his COPD during the hearing. (Tr. 34-61). Plaintiff acknowledged that he is still smoking. *Id.* He stated he could lift "probably five to eight pounds." (Tr. 45). He stated he could only stand in one place for "five to 10 minutes." *Id.* Plaintiff reported he could walk to the post office "one street away" and could walk a city block. *Id.* He claimed he could only sit in an office chair for "five minutes, maybe" without needing to get up. (Tr. 46). When Plaintiff's attorney later asked about sitting, Plaintiff could not explain why he could only sit for five minutes. (Tr. 51). Plaintiff told the ALJ he can sweep and vacuum, do laundry, and prepare meals. *Id.* He can drive and visit the store twice a week. *Id.* He noted, however, that he has difficulty carrying many groceries at once because he lives on the second floor. *Id.*

Regarding his neuropathy, Plaintiff testified that his feet are "totally numb pretty much" from the balls of his feet to the end of his toes. (Tr. 43). Plaintiff further testified that his neuropathy does not affect his ankle or above. (Tr. 48). He stated he gets numbness in his hands and it sometimes goes to his shoulders. (Tr. 49). Plaintiff explained that he drops things because of the numbness. (Tr. 49).

**V.  Discussion**

Plaintiff argues the ALJ's decision is not supported by substantial evidence on the record as a whole. (ECF No. 21 at 3). First, Plaintiff believes the ALJ failed to fully and fairly develop the record to properly determine Plaintiff's RFC. *Id.* Second, Plaintiff contends that the ALJ failed to properly evaluate RFC. *Id.* For the following reasons, the Court finds the ALJ's decision is

based on substantial evidence and is therefore consistent with the Social Security Administration Regulations and case law.

> ### a. The ALJ's decision is based on sufficient evidence of Plaintiff's ability to function in the workplace and additional development of the record is unnecessary.

Plaintiff believes the ALJ failed to fully and fairly develop the record. *Id.* First, Plaintiff contends that the ALJ improperly relied on Dr. Harry Cole's evaluation because Dr. Cole is a non-examining, non-treating source. *Id.* at 6 (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Plaintiff specifically takes issue with the fact that Dr. Cole's evaluation does not account for or reflect Plaintiff's COPD and neuropathy. *Id.* at 4-5. Second, Plaintiff argues that the ALJ improperly failed to obtain medical evidence of Plaintiff's ability to function in the workplace from January 25, 2018—the date of Dr. Cole's opinion—to August 14, 2019—the date of the hearing decision. *Id.* at 6. Third, Plaintiff alleges that the ALJ drew inferences from the medical evidence instead of obtaining relevant medical evidence. *Id.* (citing *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017; *Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009)). In sum, Plaintiff argues the ALJ failed to adequately develop the record such that the ultimate RFC determination is unsupported by substantial evidence.

Defendant believes the ALJ properly relied on the entire record to formulate Plaintiff's RFC. (ECF No. 27 at 4-5). Defendant contends that the ALJ did not rely entirely on Dr. Cole's evaluation. *Id.* at 9. Defendant states that the ALJ need not place any special importance on the treating relationship between Plaintiff and the medical source. *Id.* at 10 (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). Defendant argues that the ALJ did not need to further develop the record because the record provides a sufficient basis for the ALJ's decision. *Id.* at 7 (citing *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013)).

The ALJ's duty to develop the record arises from the fact that the disability determination process is not an adversarial one. *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020) (citation omitted). The Commissioner's duty exists alongside the claimant's burden to prove his case. *Id.* "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (quoting *Nevland*, 204 F.3d at 858). In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. §§ 404.1519a(b). "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citation omitted). An ALJ's failure to cite specific evidence does not indicate that he failed to consider such evidence. *Id.* "So long as other evidence in the record provides a sufficient basis for their decision, the ALJ does not need to seek additional evidence." *Foust for Foust v. Saul*, No. 4:19-CV-933 RWS, 2020 WL 2412561, at *4 (E.D. Mo. May 12, 2020) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

The ALJ determined Plaintiff has the following severe impairments: (1) left knee osteoarthritis, status-post surgical fixation, (2) peripheral neuropathy, (3) chronic obstructive pulmonary disease (COPD), (4) depression, (5) anxiety and panic disorder, and (6) alcohol dependence. (Tr. 12). The ALJ found that Plaintiff has the RFC to perform light work. (Tr. 19). The AJL concluded that Plaintiff can perform past relevant work as a cleaner and that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." (Tr. 26).

Regarding Plaintiff's COPD, the ALJ acknowledged that Plaintiff has moderate COPD but found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms to be inconsistent with the record. (Tr. 21). The ALJ stated that Plaintiff's respiratory examinations show clear lungs without rales, wheezes, or rhonchi. *Id*. The ALJ also noted Plaintiff's oxygen saturation rate was "98 to 99 percent through the period at issue." *Id*. The ALJ considered Plaintiff's August 2018 x-ray that showed no acute cardiopulmonary disease. *Id*. Finally, the ALJ stated: "the claimant continues to smoke despite repeated advice to stop, an indication that his symptoms are not as disabling as alleged." *Id*.

The ALJ also addressed Plaintiff's neuropathy. While the ALJ acknowledged Plaintiff's reduced grip strength and moderate difficulty in picking up a penny off the examination table, the ALJ determined that "overall physical and neurological examinations show an ability to oppose the thumb to each finder bilaterally, normal sensation and reflexes as well as full grip strength." (Tr. 21). The ALJ cited an evaluation dated April 16, 2018 that states: "Muscle strength was 5/5 in the flexor and extensor musculature of the right and left upper and lower extremities. Sensory exam revealed no loss of pinprick or light touch in a stocking/glove distribution of both upper and lower extremities." (Tr. 21, 512)

As to both impairments, the ALJ found that Plaintiff can engage in robust activities of daily living in that "he is able to engage in self-care, drive, shop in stores, manage finances, do laundry, prepare meals and clean his apartment." (Tr. 22). The ALJ also pointed out that Plaintiff stopped working for reasons unrelated to his impairments. *Id*.

Regarding credibility, the ALJ found Dr. Cole's evaluation unpersuasive as to Plaintiff's Title II claim:

> I find unpersuasive the opinion of Dr. Cole due to lack of
> consistency and lack of support with the record prior to the date last

12

> insured. Prior to the date last insured, the record shows the claimant with coarse breath sounds as well as wheezing (Exhibit 4F/3). Therefore, I find the claimant had severe impairments prior to the date last insured.

(Tr. 22). Put another way, the ALJ believed Dr. Cole's evaluation was inconsistent with the record because it did not address Plaintiff's pulmonary issues. The ALJ found Dr. Cole's opinion more persuasive as to Plaintiff's Title XVI claim but still noted that "later records support the need for additional pulmonary and temperature limitations due to COPD and manipulative limitations and foot controls due to neuropathy." (Tr. 22).

Having thoroughly reviewed the record in its entirety, the Court finds that the ALJ's decision is based on sufficient evidence of Plaintiff's ability to function in the workplace. Despite a lack of medical opinion evidence as to some aspects of Plaintiff's ability to function in the workplace, the ALJ was able to rely on medical records detailing the plaintiff's symptoms and medical history. *See Foust,* 2020 WL 2412561, at *4. Where medical evidence is silent as to work-related restrictions such as the length of time a claimant can sit, stand, and walk, and the amount of weight he can carry, the fault is not necessarily the ALJ's. *Id*. (citing *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008)). It is the claimant's burden to prove disability and the claimant's failure to provide medical evidence with this information should not be held against the ALJ when there is sufficient medical evidence to support the ALJ's decision. *Id*.

Here, there is sufficient medical evidence to support the ALJ's decision. As to Plaintiff's COPD, the record reflects strong oxygen saturation levels (Tr. 396, 420, 435) and normal breathing throughout. (Tr. 401, 441, 485, 489, 511). Plaintiff's chest x-ray showed his lungs were "well expanded and clear[.]" (Tr. 469). The radiologist found "[n]o acute cardiopulmonary disease process identified." *Id*. Dr. Talley stated in September 2018 that "albuterol helps a lot." (Tr. 423). In December 2018, Dr. Talley wrote that Plaintiff's COPD is stable and he rarely coughs. (Tr.

13

438). Plaintiff can sweep, vacuum, do laundry, prepare meals, drive, and visit the store twice a week. (Tr. 51). Further, Plaintiff still smokes despite repeated advice to quit. (Tr. 43, 397, 423). Considering the evidence, it is reasonable to conclude that Plaintiff's statements about the intensity, persistence, and limiting effects of his COPD are inconsistent with the medical evidence in the record. *See Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017).

The same is true of Plaintiff's neuropathy. As stated above, Plaintiff can sweep, vacuum, do laundry, prepare meals, drive, and visit the store twice a week. (Tr. 51). There is also at least some evidence to suggest Plaintiff maintains normal sensation and strength. (Tr. 512). While its possible to review the evidence and draw a different conclusion, a reasonable mind could find the evidence adequate to support the ALJ's decision. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000); *see also Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (where it is possible to draw two inconsistent conclusions from evidence and one of them represents the Commissioner's findings, the Court must affirm).

As to both COPD and neuropathy, the record establishes that Plaintiff did not leave the workforce because of his impairments. Plaintiff was laid off from his last job. (Tr. 208). In fact, Plaintiff reported he was terminated from "maybe half [his] jobs" because he could not get along with others. (Tr. 225).

The Court finds that additional evidence is not necessary because there is ample evidence in the record to provide a sufficient basis for the ALJ's decision. 20 C.F.R. § 404.1519a; s*ee Foust*, 2020 WL 2412561, at *4. The ALJ did not improperly draw inferences from the medical evidence. Rather, he relied on medical records detailing Plaintiff's symptoms and medical history. The ALJ did not improperly rely on Dr. Cole's evaluation. The ALJ's decision shows he considered the record as a whole and even discounted portions of Dr. Cole's opinion. Finally, medical opinions

14

of treating physicians are no longer entitled to special evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ fully and fairly developed the record.

### b. The ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

Plaintiff alleges that the ALJ failed to property evaluate Plaintiff's RFC. (ECF No. 21 at 7). Plaintiff argues that the evidence supports a finding that he is limited to no more than sedentary work. *Id*. Defendant claims that the ALJ's finding is supported by substantial evidence. (ECF No. 27 at 11). The Court agrees.

A claimant's RFC is a medical question that must be supported by some medical evidence of the claimant's ability to function in the workplace. *Noerper*, 964 F.3d at 745 (citation and quotation marks omitted). But the RFC determination is ultimately reserved to the agency and is not delegated to medical professionals or determined only on the contents of medical records. *Id*. (citation omitted). While medical opinions are considered in assessing RFC, the final determination should be based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *Id.* at 744 (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)) (quotation marks omitted).

Here, as the Court explained above, the ALJ considered the entire record in reaching his conclusion and there is substantial evidence to support that conclusion. The Court need not restate those details here. The Court cannot reverse the ALJ "merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided differently." *KKC ex rel. Stoner* at 370. "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. After careful review of the record, the Court cannot say that the ALJ's decision "lies outside the available zone of

15

choice." *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (citation omitted). Thus, the Court will uphold the ALJ's determination of Plaintiff's RFC.

## VI.  Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that Kilolo Kijakazi is substituted as Defendant in this action for Andrew Saul under Rule 25(d), Fed. R. Civ. P., and the Clerk of the Court shall modify the docket sheet and short title of the case to reflect this substitution.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment will follow.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of September, 2021.

16